*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0235p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOHN DOE,

    *Plaintiff-Appellant,*

  *v.*

THE SALVATION ARMY IN THE UNITED STATES; THE
SALVATION ARMY EASTERN TERRITORY,

     *Defendants-Appellees.*

No. 07-3822

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 05-00901—George C. Smith, District Judge.

Argued: March 17, 2008

Decided and Filed: July 1, 2008

Before: RYAN, SILER, and COLE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Jane P. Perry, OHIO LEGAL RIGHTS SERVICE, Columbus, Ohio, for Appellant. Hamilton DeSaussure, Jr., OLDHAM KRAMER, Akron, Ohio, for Appellees. **ON BRIEF:** Jane P. Perry, OHIO LEGAL RIGHTS SERVICE, Columbus, Ohio, for Appellant. Hamilton DeSaussure, Jr., Cara L. Galeano-Legarri, OLDHAM KRAMER, Akron, Ohio, for Appellees.

---

## OPINION

---

  RYAN, Circuit Judge. The plaintiff, John Doe, appeals the district court's summary judgment dismissing Doe's lawsuit against the defendants, The Salvation Army in the United States and the Salvation Army Eastern Territory.

  Doe claims that when he was being interviewed for a job with the Salvation Army, the interviewer asked him about his medications. When Doe acknowledged that he took psychotropic medications, he was rejected for the job, in violation, he alleges, of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794(a), and Ohio Rev. Code Ann. § 4112.02.

  We hold that summary judgment for the defendants was inappropriate because there are genuine issues of material fact as to whether Doe qualifies as "disabled" under the Rehabilitation

Act and whether the Salvation Army's failure to hire Doe was based solely on Doe's purported disability.

## I.

Doe, proceeding pseudonymously under a protective order, suffers from paranoid schizophrenia disorder. From 1995 through 2005, because of his condition, he was hospitalized or lived in various group homes. In 2005, still under medical supervision, Doe began working with job developer Cordell DeGraw at the Center of Vocational Alternatives (COVA) in Columbus, Ohio. Sometime in May 2005, DeGraw contacted Charles Snider, the supervisor of the Salvation Army's Adult Rehabilitation Center (ARC) warehouse and arranged for Doe to be interviewed for a truck driver position with the Salvation Army.

When Doe, accompanied by DeGraw, arrived for the interview, Snider instructed Doe to fill out an application and explained that the part-time job that was available required three eight-hour days per week and paid $7.00 per hour. Doe responded that he could not work on Fridays because, "[he] had to see [his] doctor, and . . . pick up [his] medicine." Snider asked Doe "what kind of medication" he took, and Doe responded, "psychotropic medicine." According to Doe, at that point, Snider "stopped the interview and said that his insurance would not cover me." Doe offered to obtain a letter from his doctor, but Snider refused to reconsider.

Snider testified that he ended the interview saying, "[w]hat I'll have to do is have this checked out," meaning apparently, that he wanted to determine whether the ARC's insurance policy would cover a driver using psychotropic medication. However, Snider never pursued an investigation into the insurance coverage and later hired nine other drivers.

Doe filed a complaint in the district court, alleging a violation of the Rehabilitation Act of 1973 and Ohio Rev. Code Ann. § 4112.02. He claimed that he was eligible for relief under both the federal and state statutes because he has "a record of" a disability within the meaning of § 705(20) of the Act. 29 U.S.C. § 705(20)(B)(ii). He also claimed that the Salvation Army asked a "prohibited pre-employment inquiry" and denied him employment based on his answer. The district court granted the Salvation Army's motion for summary judgment, holding that Doe failed to establish the elements for a *prima facie* disability discrimination case.

Doe now appeals, arguing that the district court erred by analyzing Doe's present mental health as the determinant of his eligibility for relief; applying standards for employee/employer relationships rather than applicant/potential employer standards; and failing to recognize that the Salvation Army asked a prohibited pre-employment inquiry. Doe has now abandoned his state law discrimination claim. *See Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991).

## II.

We review a district court's legal conclusions supporting its grant of summary judgment *de novo*. *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 463 (6th Cir. 2004). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

We review claims brought under the Rehabilitation Act as we would claims brought under the Americans with Disabilities Act of 1990. *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004).

Doe first argues that the district court erred by failing to analyze his claim of disability under the "record of . . . an impairment" provision of § 705(20)(B)(ii) of the Act. The Rehabilitation Act defines a disabled person as one who:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;
> (ii) *has a record of such an impairment*; or
> (iii) is regarded as having such an impairment.

29 U.S.C. § 705(20)(B) (emphasis added). Courts are required to make a case by case determination of whether an individual qualifies as "disabled." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999).

If Doe produced evidence sufficient to raise a genuine issue of material fact as to whether he had "a record of" "a physical or mental impairment which substantially limits one or more of [his] major life activities," summary judgment should not have been entered dismissing his case. We think he did.

Doe submitted numerous doctor reports and evaluations to support his claim that he has a record-supported history of paranoid schizophrenia disorder, which caused substantial limitations to his major life activities of self-care, thinking, learning, and working.

The district court apparently relied upon evidence of Doe's *present* abilities to determine whether Doe was disabled rather than recognizing that Doe's claim is that he is disabled because he has "a record of" a mental impairment that substantially limited one or more of his major life activities.

One might reasonably ask why a person who has "a record of" such impairment, but presently has no such impairment, should be permitted to maintain an action under the Rehabilitation Act. Good question; however, Congress has defined the class of persons who may maintain such an action, and we are not free to gainsay Congress.

Based on the evidence before the district court, viewed in the light most favorable to Doe, there exists a genuine issue of material fact whether Doe established "a record of" a disability under the Rehabilitation Act. Therefore, the district court erred by granting summary judgment to the Salvation Army.

## IV.

Next, Doe argues that the district court erred in granting summary judgment to the Salvation Army based on the court's conclusions that the Salvation Army's failure to hire Doe was based on safety concerns.

The Rehabilitation Act of 1973 states, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  In order to make out a *prima facie* case for discrimination, a claimant must prove four elements:  (1) that he is disabled; (2) that he was otherwise qualified for the position; (3) that he was excluded solely by reason of his disability; (4) and that the relevant program is receiving federal financial assistance.  *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030-31 (6th Cir. 1995).

We think there is a genuine issue of material fact as to whether the Salvation Army discriminated against Doe solely because of his record of a disability.

The district court held that Doe failed to demonstrate that the Salvation Army knew about his purported disability, and thus, he did not make out a *prima facie* case that the  Salvation Army refused to hire him solely because of his disability.  We respectfully disagree and we think that, at a minimum, there is a genuine issue of material fact as to the Salvation Army's reason for rejecting Doe.

Doe applied for the job through COVA.  DeGraw testified that when he contacts potential employers on behalf of clients, he typically states that "[w]e are an agency that works with people that have disabilities."  Snider testified that he was aware that COVA's mission is to help individuals with disabilities and other challenges.  Doe offered the information that he could not work on Fridays because it was the day he went to the psychiatrist to pick up his medicine.  Snider then inquired as to the types of medications Doe took.  Doe replied that he took "psychotropic drugs."  Snider testified:  "I know they are given to people with some type of disorder."

The Salvation Army argued, and the district court agreed, that Snider rejected Doe for safety concerns, not for reasons solely based on Doe's disability.  However, it was immediately after Doe revealed his specific medications that Snider abruptly ended the interview.  Snider testified that he ended the interview stating, "I did not say flat out no," but rather, "I'll have to check [the insurance] out."  As we now know, he did not do so.

An employer may not base a hiring decision on a perceived notion that the applicant's disability renders him incapable to perform the job.  *See Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000).  The district court stated that "[c]ourts have unanimously held that an individual with a disability 'cannot perform the essential functions of a job if his handicap poses a significant risk to those around him.'"  But in May 2005, Snider ended Doe's interview not because he concluded that Doe's employment as a driver would pose a risk to others, but because Snider "wasn't going to take a chance" on Doe.

The Rehabilitation Act's implementing regulations state rather remarkably, to be sure, that potential employers may not ask questions "to determine whether the applicant is an individual with handicaps or the nature or severity of a handicap."  24 C.F.R. § 8.13(a).  Snider testified that he inquired as to what types of medications Doe was taking.  While the district court considered this to be an "isolated incident," we think it supports, although it does not necessarily prove, Doe's claim that the Salvation Army violated the Rehabilitation Act.

Viewing the evidence submitted in the light most favorable to Doe, we think a genuine issue of material fact exists as to whether the Salvation Army's decision not to hire Doe was based solely on his disability.

## V.

We conclude that summary judgment should not have been entered dismissing Doe's claims because there are genuine issues of material fact relating to whether Doe is a disabled person under the Rehabilitation Act, and, if he is, whether the Salvation Army's sole reason for refusing him a job was his disability.

Therefore, we **REVERSE** the district court's summary judgment for the defendants and **REMAND** for further proceedings.