NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0158n.06
Filed: February 23, 2009

## No. 08-1553

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JEFFREY ZIBBELL and CHERYL ZIBBELL, | ) ) | |
| Plaintiff-Appellants, | ) ) ) | |
| v. | ) ) ) | |
| MICHIGAN DEPARTMENT OF HUMAN SERVICES, MICHIGAN DEPARTMENT OF COMMUNITY MENTAL HEALTH, MARQUETTE COUNTY RESOURCE MANAGEMENT, ALGER-MARQUETTE COMMUNITY ACTION BOARD, UPPER PENINSULA POWER COMPANY and MARVIN PLOTEZKA, | ) ) ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | |

Before: GIBBONS and McKEAGUE, Circuit Judges, and SHADUR, Senior District Judge.[*]

**SHADUR,** Senior District Judge. Married couple Jeffrey Zibbell ("Jeffrey") and Cheryl Zibbell ("Cheryl") (collectively the "Zibbells")[1] appeal from a district court opinion and order that dismissed their lawsuit in its entirety as to all defendants-appellees. On appeal the Zibbells argue that the district court (1) erred in denying them relief under Title II of the Americans with

---

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

[1] While we customarily refer to individuals by their last names, no disrespect is of course intended in referring to Zibbells, who share that surname, by their first names.

Disabilities Act ("ADA," 42 U.S.C. §12132), (2) erred by failing to grant them relief under Rehabilitation Act of 1973 §504 ("Section 504"), 29 U.S.C. §794, (3) abused its discretion when it denied their motion for preliminary injunction, (4) erred by disregarding certain attachments to the Complaint and (5) erred in failing to have a United States Marshal serve what the Zibbells characterize as their "amended complaint." For the reasons described below we affirm the district court's dismissal as against all defendants-appellees but vacate that court's opinion in part.

## BACKGROUND

On May 21, 2007 the Zibbells filed a pro se Complaint against multiple defendants, including defendants-appellees, in the United States District Court for the Western District of Michigan pursuant to 42 U.S.C. §1983. Cheryl and Jeffrey claim they are disabled: Jeffrey says he was injured in a motorcycle accident in 1987 and suffers from a fractured spine, while Cheryl asserts she cannot lift more than ten pounds. Cheryl and Jeffrey charge they were denied assistance to which they were entitled.[2]

---

[2] In their self-prepared Complaint the Zibbells set out a litany of grievances that a magistrate judge characterized as "largely incoherent" in a July 23, 2007 Report and Recommendation ("First Report") that was later adopted by the district court in its Opinion and Order Approving Magistrate Judge's Report and Recommendation (Zibbell v. Granholm, 2007 WL 2438314 (W.D. Mich, Aug. 23) ("Zibbell I")). That First Report described the alleged deprivations more thoroughly than need be done here. Briefly the Zibbells charged they were forced to live without heat, electricity and water and were denied assistance by the Michigan Department of Human Services ("Human Services Department"). They say that when their house was condemned, Marvin Plotezka ("Plotezka") denied them assistance with home repairs. Because they have been denied loans to which they claim entitlement, the Zibbells complain that they are expected to pay their mortgage, insurance, taxes, mortgage interest, telephone, utilities, medical expenses, automobile maintenance, food, clothing, furniture and other expenses on

Because the Zibbells were granted leave to proceed in forma pauperis, the matter was assigned to a United States magistrate judge for review and recommendation before the Complaint was served. In the resulting First Report the Zibbells' Complaint was characterized as "indisputably meritless," with the exception of possible relief under ADA's Title II (see Zibbell I, 2007 WL 2438314, at *3-4). On August 1, 2007 the Zibbells filed objections to the First Report ("First Objections"). Then on August 23, 2007 the district court issued the Zibbell I opinion and order approving and adopting the First Report, denying the Zibbells' motions for summary judgment and for injunctive relief and dismissing the entire action as "frivolous" except for its invocation of ADA's Title II (id. at *1).

All defendants then filed motions to dismiss or motions for summary judgment to address the remaining ADA issues. Those motions were again referred to the magistrate judge, who issued a March 19, 2008 Report and Recommendation ("Second Report") calling for the dismissal of all remaining claims as to all defendants. On March 26, 2008 the Zibbells filed objections to the Second Report ("Second Objections"). Then on April 14, 2008 the district court entered a Memorandum and Order adopting the Second Report and dismissing the Zibbells' entire Complaint with prejudice as to all defendants (Zibbell v. Granholm, 2008 WL 1766588 (W.D. Mich. Apr. 14) ("Zibbell II")) on these grounds stated in the Second Report:

> 1. Human Services Department's and the Michigan Department of
> Community Mental Health's ("Mental Health Department's") motion to dismiss

---

$1900 per month. And the list goes on.

was granted because (1) the Zibbells made no allegations supporting an ADA claim against them and (2) those defendants were immune from suit under the Eleventh Amendment to the United States Constitution.

2. Alger-Marquette Community Action Board's ("Alger-Marquette's") and Plotezka's motion for summary judgment was granted because Alger-Marquette and Plotezka are not public entities under the ADA.

3. Upper Peninsula Power Company's ("Power Company's") motion to dismiss was granted because (1) Power Company is not a public entity under the ADA and (2) the Zibbells failed to show how Power Company's involvement stated an ADA claim.

4. Marquette County Resource Management's ("Resource Management's") motion to dismiss was granted because the Zibbells failed to set forth an actionable ADA claim.

It is from that final order in Zibbell II and the earlier nonappealable Zibbell I order that the Zibbells take their appeal, raising these issues:

1. Did the district court err when it dismissed or granted summary judgment against the Zibbells on their ADA claims?

2. Did the district court abuse its discretion when it denied the Zibbells' motion for preliminary injunction?

3. Did the district court err with regard to the Zibbells' Section 504 claims?

4. Did the district court err by failing to have the United States Marshals Service serve what the Zibbells characterize as their "amended complaint"?

     5.  Did the district court err in disregarding attachments to the Zibbell's

Complaint, including a Department of Justice letter referring to Section 504?

We have jurisdiction under 28 U.S.C. §1291.

## STANDARDS OF REVIEW

Dismissal under Rule 12(b)(6) is a question of law subject to de novo review (Bassett v.

Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)).  To survive a Rule 12(b)(6)

motion, "factual allegations contained in a complaint must raise a right to relief above the

speculative level" (id. (internal quotation marks omitted)).  That does not "require heightened

fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its

face" (Bell Atl. Corp. v. Twombly, 550 U.S. 544, __, 127 S.Ct. 1955, 1974 (2007)).  On appeal

"we construe the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff" (Directv, Inc. v. Treesh, 487

F.3d 471, 476 (6th Cir. 2007)).  Finally, we "may consider the Complaint and any exhibits

attached thereto, public records, items appearing in the record of the case and exhibits attached to

defendant's motion to dismiss so long as they are referred to in the Complaint and are central to

the claims contained therein" (Bassett, 528 F.3d at 430).

     Orders granting summary judgment are also subject to de novo review on appeal (id.).  To

that end "we must assume the truth of the non-moving party's evidence and construe all

inferences from that evidence in the light most favorable to the non-moving party" (Ciminillo v.

Streicher, 434 F.3d 461, 464 (6th Cir. 2006)).  Motions for summary judgment must not be

granted when a genuine issue of material fact exists--"when there is sufficient evidence for a trier of fact to find for the non-moving party" (<u>id</u>.).

Lastly, we review the denial of preliminary injunctive relief for abuse of discretion (<u>Am. Civil Liberties Union of Ohio, Inc. v. Taft</u>, 385 F.3d 641, 645 (6th Cir. 2004)).  That concludes the applicable standards of review, and we turn to the review itself.

## AMERICANS WITH DISABILITIES ACT

As for Title II of the ADA, we find that the district court's dismissal rulings are supported by the law and the record as to all appellees, but with one important exception: For the reasons stated hereafter, its venture into the subject of Eleventh Amendment immunity was at odds with the Supreme Court's teaching.  Accordingly we vacate that aspect of the district court's opinion, but its other ADA-related rulings are affirmed as to all appellees.

<u>Human Services and Mental Health Departments</u>

<u>Zibbell II</u> dismissed the claims against the Human Services and Mental Health Departments on two independent bases.  We affirm only one of the two.

In a properly supported ruling, the district court granted the Human Services Department-Mental Health Department motion to dismiss because the Zibbells had failed to state a viable ADA claim.  It was not enough for the Zibbells to allege, in essence, that the two Departments denied them services after informing them that they were too "rich" to receive benefits (<u>Zibbell II</u>, 2008 WL 1766588, at *5).  Denial of services for being too "rich" does not ground an ADA claim.  Hence that portion of the district court's ruling is affirmed.

But the district court also grounded its decision on the alternative basis that the Human Services and Mental Health Departments were entitled to immunity under the Eleventh Amendment. Citing <u>Popovich v. Cuyahoga Court of Common Pleas</u>, 276 F.3d 808 (6th Cir. 2002) (en banc), <u>Zibbell II</u>, 2008 WL 1766588, at *5 said:

> The Sixth Circuit has ruled that the Eleventh Amendment bars a civil rights action to the extent that it relied on congressional enforcement of equal protection in non-employment ADA cases.

On that authority the district court held that the Human Services and Mental Health Departments were shielded with immunity because "[p]laintiffs have not shown that the Legislature or the State has waived Eleventh Amendment immunity for this type of ADA claim" (<u>id</u>.).

But because the district court correctly determined that the Zibbells failed to state an ADA claim, it need not--and should not--have ventured into the consideration of immunity under the Eleventh Amendment. <u>United States v. Georgia</u>, 546 U.S. 151 (2006) has mandated a procedure for lower courts to follow when confronted with a state's claim of immunity under the Eleventh Amendment in cases involving ADA Title II. In a departure from the often-followed approach exemplified by <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83 (1998), <u>Georgia</u>, 546 U.S. at 159 instructs lower courts:

> to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

Here, in its determination that the conduct alleged by the Zibbells failed to state an ADA claim against the Human Services and Mental Health Departments, the district court took what

amounts to the first step of the Georgia analysis: It found that none of the alleged conduct violated Title II. That then, under Georgia, obviated any need to consider whether the two Departments were also immune from suit under the Eleventh Amendment.

Indeed, in a case presenting very similar issues, the Supreme Court recently vacated and remanded a decision of our court because it had failed to apply the Georgia approach (see Haas v. Quest Recovery Servs., Inc., 549 U.S. 1163 (2007)). On that remand our unpublished opinion in Haas v. Quest Recovery Servs., Inc., 247 F. App'x 670, 671 (6th Cir. Aug. 21, 2007) ("Haas II") described how, in Haas v. Quest Recovery Servs., Inc., 174 F.App'x 265 (6th Cir. 2006) ("Haas I"):

> We held that (1) the Amended Complaint failed to state a valid claim under Title II against the State of Ohio, and (2) the State of Ohio was immune from suit under the Eleventh Amendment and Congress had not effectively abrogated that immunity.

After Haas I the Supreme Court had granted the United States leave to intervene, granted certiorari, vacated the Haas I judgment and returned the case to our court to consider the potential avoidance of Eleventh Amendment analysis (see 549 U.S. at 1163).

Needless to say, our court heeded the Supreme Court's directive. We said in Haas II, 247 F. App'x at 672 that "under Georgia, the constitutional question--abrogation of Eleventh Amendment immunity--will be reached only after finding a viable claim under Title II." Because the plaintiffs there had failed to state such a viable claim, we concluded (id. at 673) that "we need not reach the remaining prongs of the Georgia analysis."

Under the teaching of Georgia, and given the Supreme Court's insistence that lower courts adopt its analytical framework, the district court's dismissal of the Zibbells' case against

8

the Human Services and Mental Health Departments for failure to state a claim should not have

been followed by any consideration of the other steps of the Georgia analysis. We therefore

vacate the portion of the district court's opinion dealing with Eleventh Amendment immunity.

Resource Management

We affirm the dismissal of Resource Management because, as the district court held

correctly, the Zibbells "failed to set forth any actionable claim" against that defendant and did not

explain how it "could have violated plaintiffs' rights under the ADA" (Zibbell II, 2008 WL

1766588, at *6). While the Complaint named Resource Management in the caption, the Zibbells

acknowledge that the only conceivable reference to that defendant in the body of the Complaint

is this single mention of Marquette County employee Steven Enright:

> Our house is condemned but Steve Enright passed inspection for MHSDA anyway
> because we were living in a tent for months before we were allowed to buy this house just
> before winter. We qualify for the rehab we still never got from 1999. Our roof has been
> leaking ever since and the ceiling is caving in. Our appliance's [sic] are from the 50's.
> We are not allowed any clothes dryer as the electric is so out-dated.

To augment their purported case against Resource Management, the Zibbells now point to

additional statements found in their First Objections and Second Objections that they contend

further implicate Resource Management in wrongdoing.

Those assertions are not of course a part of the Complaint itself. But even if they were to

be considered as such out of an abundance of solicitude for the Zibbells' pro se status, the

Zibbells have still failed to assert that Resource Management denied them any service, program

or activity based on their alleged disabilities that would be protectable under ADA's Title II.

Because the Complaint contained neither "direct [n]or inferential allegations respecting all the

9

material elements to sustain a recovery under <u>some</u> viable legal theory" (<u>Allard v. Weitzman</u> (<u>In re Delorean Motor Co.</u>), 991 F.2d 1236, 1240 (6th Cir. 1993)(emphasis in original)), dismissal of its Title II claim was warranted and is affirmed.

<u>Power Company</u>

In <u>Zibbell II</u> the district court held that the Zibbells failed to show how the Power Company could be considered a "public entity" liable under Title II of the ADA (2008 WL 1766588, at *6). Moreover, the district court held that the Zibbells "failed to show that defendant [Power Company] has any involvement other than simply providing electrical power and maintaining a utility pole" (<u>id</u>.). Because the Zibbells have neither shown the Power Company to be a covered public entity nor stated a viable claim against that defendant, we affirm its dismissal as well.

<u>Alger-Marquette and Plotezka</u>

As with the Power Company, the district court was correct to find that Alger-Marquette and Plotezka are not "public entities" under the ADA (<u>id</u>.). That finding entitled Alger-Marquette and Plotezka to dismissal under the ADA, and such dismissal is therefore also affirmed.

**SECTION 504 OF THE REHABILITATION ACT**

On appeal the Zibbells contend that the district court erred by disregarding their allegations that the defendants-appellees violated Section 504. Relatedly the Zibbells argue that the district court erred when it disregarded certain exhibits to their Complaint, including a "Dept. of Justice letter referring to the Section 504 Rehabilitation Act violations." They also claim to

have filed an amended complaint containing Section 504 allegations, which "had to be filed in 15 parts due to the voluminous evidence proving the Americans with Disabilities Act and the Rehabilitation Act does not exist in Michigan state/local government," and they add that the district court erred by failing to have the United States Marshal serve the purported amended complaint.

Four of the defendants (referred to here as "Merits Appellees"[3]) had their ADA-based claims dismissed on the merits. Although the district court did not cite to Section 504, its substantive analysis of the Zibbells' ADA claims applies with equal force to their Section 504 claims. We have said that the ADA and the Rehabilitation Act "in this circuit share the same substantive standard," and that is so "despite the linguistic differences between the two acts" (Jones v. Potter, 488 F.3d 397, 403 (6th Cir. 2007)). Thus "[w]e review claims brought under the Rehabilitation Act as we would claims brought under the Americans with Disabilities Act of 1990" (Doe v. Salvation Army in the United States, 531 F.3d 355, 357 (6th Cir. 2008)).

Hence no further analysis was required from the district court. Even if we were to assume arguendo that the Zibbells had stated claims under Section 504, those claims would have been denied just as the ADA claims were. We therefore affirm dismissal as against all the Merits Appellees.

---

[3] Merits Appellees include the Human Services Department, the Mental Health Department, Resource Management and the Power Company.

11

As to the two remaining defendants-appellees, the district court dismissed the ADA claims brought against them solely because they are not "public entities" covered by the ADA.[4] But Section 504 provides different coverage: It prohibits discrimination by "any program or activity receiving Federal financial assistance" (29 U.S.C. §794(a)). Some further analysis is therefore required as to Plotezka and Alger-Marquette.

As to the former, the district court stated the truism that "Plotezka is an individual"--see Zibbell II, 2008 WL 1766588, at *8--and obviously not a "program" or "activity" covered under the Rehabilitation Act. But as to Alger-Marquette, the district court stated only that it "is a private, non-profit corporation" (see id.) and did not make any finding as to whether Alger-Marquette receives federal financial assistance. Thus Alger-Marquette is the only appellee with respect to which the district court did not effectively rule for Section 504 purposes.

Although the "general rule" is that "a federal appellate court does not consider an issue not passed upon below," we enjoy the discretion to decide an issue "to serve the interests of judicial economy" (Lindsay v. Yates, 498 F.3d 434, 441 (6th Cir. 2007)(internal quotation marks and citations omitted)). Exercise of that discretion is appropriate "where the proper resolution is beyond any doubt or where injustice . . . might otherwise result" (Wagenknecht v. United States, 533 F.3d 412, 418 (6th Cir. 2008) (ellipsis in original, internal quotation marks and citation omitted)). Here it is beyond doubt that the Zibbells' claim against Alger-Marquette, just as

---

[4] We note parenthetically that the Power Company was alternatively dismissed in ADA terms because the district court found that it is not a public entity. But because the district court also ruled in the Power Company's favor on the merits and we have affirmed that ruling, no further analysis is required.

against the other appellees, lacks merit. We therefore affirm dismissal of the Zibbells' Section 504 claim against Alger-Marquette as well as against all other appellees.

## MOTION FOR PRELIMINARY INJUNCTION

Finally, Cheryl and Jeffrey Zibbell claim the district court abused its discretion when it denied their motion for preliminary injunction. That motion sought:

> $800,000 for land, house set up with all solar panels for energy and all alternative sources to never depend on any MI utility again, new vehicle, snow removal equipment, new furniture, clothing, etc.

In deciding whether to grant or deny a preliminary injunction, a district court must consider four factors (Deja Vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson County, 274 F.3d 377, 400 (6th Cir. 2001)):

> (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest.

While the Zibbells attempt to show that they suffered irreparable harm in various ways, including "being forced to heat with wood, lift/carry water while living in tents, state workers ordering us to shovel snow to violate medical restrictions, relocate through several evictions with no assistance, mental cruelty, anguish and denied medications," we reject any notion that the district court abused its discretion by denying the Zibbells' motion. From our review of the Zibbells' motion, we hold that the district court concluded, and rightfully so, that the Zibbells' likelihood of success on the merits was near zero. Accordingly we also affirm the district court's denial of the Zibbells' motion for preliminary injunction.

**CONCLUSION**

Having held that the Zibbells failed to state an ADA claim against the Human Services and Mental Health Departments, the district court should not have gone on to address the legal issue of their claimed immunity under the Eleventh Amendment. As such, the district court's Eleventh Amendment analysis in that respect is vacated. In all other respects we affirm.